**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs
and the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

RICARDO ORTIZ, HENRY FLORES, and
MARIO FLORES, *on behalf of themselves,
FLSA Collective Plaintiffs
and the Class,*

                    Plaintiffs,

                v.

ESKINA 214 CORP.
      d/b/a CAFE TABACO & RON,
ISMAEL GARCIA, and
WILLIAM SEGURA,

               Defendants.

---

Case No.:

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiffs, RICARDO ORTIZ ("Plaintiff" or "Plaintiff ORTIZ"), HENRY FLORES ("Plaintiff or "Plaintiff HENRY FLORES", and MARIO FLORES ("Plaintiff or "Plaintiff MARIO FLORES") (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, ESKINA 214 CORP. d/b/a CAFE TABACO & RON ("Corporate Defendant"), ISMAEL GARCIA, and WILLIAM SEGURA (collectively, "Individual Defendants"; and, together with Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1.     Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to fixed salary, (2) liquidated damages, and (3) attorneys' fees and costs.

2.     Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to fixed salary, (2) compensation for late payment of wages, (3) unpaid spread of hours premium, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.     Plaintiffs additionally allege that Defendants unlawfully retaliated against them, in violation of the FLSA, and thus seeks to additionally recover from Defendants (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

4.     Plaintiffs additionally allege that Defendants unlawfully retaliated against them, in violation of the NYLL, and thus seeks to additionally recover from Defendants (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

5.     Plaintiffs additionally allege for damages under the Internal Revenue Code, 26 U.S.C. § 7434 for relief, damages, fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

7.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

8.  The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26 U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court."  26 U.S.C. § 7434(d).

## PARTIES

9.  Plaintiff RICARDO ORTIZ is a resident of New York County, New York.

10.  Plaintiff HENRY FLORES is a resident of New York County, New York.

11.  Plaintiff MARIO FLORES is a resident of Queens County, New York.

12.  At all relevant times to this action, Defendants have owned and operated restaurant under the trade name "CAFE TOBACO & RON" located at 501 West 214th Street, New York, New York 10034 (the "Restaurant").

13.  Corporate Defendant ESKINA 214 CORP. d/b/a CAFE TABACO & RON is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and principal place of business located at 501 West 214th Street, New York, New York 10034.

14.  Individual Defendant ISMAEL GARCIA is a principal and owner of Corporate Defendant. ISMAEL GARCIA exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class Members. ISMAEL GARCIA had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class Members. At all relevant times, employees could complain to ISMAEL GARCIA regarding any of the terms of their employment, and ISMAEL GARCIA would have the authority to effect any changes to the quality and terms of their employment.

3

ISMAEL GARCIA ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. ISMAEL GARCIA had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

15.     Individual Defendant WILLIAM SEGURA is a principal of Corporate Defendant. WILLIAM SEGURA exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class Members. WILLIAM SEGURA had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class Members. At all relevant times, employees could complain to WILLIAM SEGURA regarding any of the terms of their employment, and WILLIAM SEGURA would have the authority to effect any changes to the quality and terms of their employment. WILLIAM SEGURA ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. WILLIAM SEGURA had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

16.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

17.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

18.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class Members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to delivery persons, waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, chefs, cooks, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.    At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper wages, including proper overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to fixed salary. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

21.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees, (including but not limited to delivery persons, waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food

preparers, chefs, cooks, and dishwashers) employed by Defendants on or after the date that is six

years before the filing of the Complaint in this case as defined herein (the "Class Period").

23.    All said persons, including Plaintiffs, are referred to herein as the "Class." The

Class Members are readily ascertainable. The number and identity of the Class Members are

determinable from the records of Defendants. The hours assigned and worked, the title of the

position held, and rates of pay for each Class Member are also determinable from Defendants'

records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under FRCP

23.

24.    The proposed Class is so numerous that a joinder of all members is impracticable,

and the disposition of their claims as a class will benefit the parties and the Court. Although the

precise number of such persons is unknown because the facts on which the calculation of that

number rests presently within the sole control of Defendants, there is no doubt that there are more

than forty (40) members of the Class.

25.    Plaintiffs' claims are typical of those claims that could be alleged by any member

of the Class, and the relief sought is typical of the relief, that would be sought by each member of

the Class in separate actions. All the Class Members were subject to Defendants' corporate

practices of (i) failing to pay wages, including overtime premium at the rate of one and one half

times the regular rate for work in excess of forty (40) hours per workweek, due to fixed salary, (ii)

late payment of wages, (iii) failing to pay spread of hours premium, (iv) failing to provide Class

Members with proper wage statements with every payment of wages, and (v) failing to properly

provide proper wage notices to Class Members, at date of hiring and dates of all wage changes,

pursuant to NYLL. All the Class Members were also subject to the same corporate practices of

Defendants, namely, filing fraudulent tax information regarding their employment to the IRS.

26.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

27.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

28.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect

to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiffs and the Class Members within the meaning of NYLL;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class Members;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class Members for their work;

d)  Whether Defendant properly notified Plaintiffs and the Class Members of their hourly rates and overtime rates;

e)  Whether Defendants paid Plaintiffs and Class Members their lawful wages in a timely manner;

f)  Whether Defendants paid Plaintiffs and Class Members their spread of hours premium for days worked in excess of ten (10) hours per workday;

g)  Whether Defendants failed to withhold taxes from the wages of Plaintiffs and the Class;

h)  Whether Defendants provided Plaintiffs and the Class with accurate tax statements for each tax year that they worked;

i)  Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

j)  Whether Defendants provided proper wage statements for each pay period to Plaintiffs and Class Members, and whether those wage statements properly stated Plaintiffs' overtime compensation and spread of hours in accordance with NYLL.

## **STATEMENT OF FACTS**

**PLAINTIFF RICARDO ORTIZ:**

31.  In or around January 2010, Plaintiff ORTIZ was hired by Defendants to work as a cook for the Restaurant. Plaintiff ORTIZ's employment with Defendants was terminated in or around March 2020, as a result of Defendants' unlawfully retaliating against Plaintiff, as described below.

32.  From the start of his employment until in or around January 2015, Plaintiff ORTIZ was regularly scheduled to work from 2:00 p.m. to 1:30 a.m. Tuesday through Saturday, and from 1:00 a.m. to 1:00 p.m. on Sunday, for a total of sixty-nine and a half (69.5) hours per week. From

January 2015 until January 2017, Plaintiff ORTIZ was regularly scheduled to work from 3:00 p.m. to 1:00 a.m. Tuesday through Sunday, for a total of sixty (60) hours per week. From January 2017 until the end of his employment, Plaintiff ORTIZ was regularly scheduled to work from 3:00 p.m. to 12:30 a.m. Tuesday through Sunday, for a total of fifty-seven (57) hours per week.

33.    Throughout his employment, Plaintiff ORTIZ was paid on a fixed salary basis regardless of actual hours worked. There was never any conversation that this fixed salary would cover overtime hours after forty (40).

34.     From January 2012 until January 2015, Plaintiff ORTIZ was paid a fixed salary of five hundred twenty-five ($525) dollars per week. From January 2015 until January 2016, Plaintiff ORTIZ was paid a fixed salary of five hundred fifty ($550) dollars per week. From January 2016 until January 2017, Plaintiff ORTIZ was paid a fixed salary of six hundred ($600) dollars per week. From January 2017 until January 2018, Plaintiff ORTIZ was paid a fixed salary of six hundred seventy-five ($675) dollars per week. From January 2018 until January 2019, Plaintiff ORTIZ was paid a fixed salary of seven hundred fifty ($750) dollars per week. From January 2019 until January 2020, Plaintiff ORTIZ was paid a fixed salary of eight hundred twenty-five ($825) dollars per week. From January 2020 until end of his employment, Plaintiff ORTIZ was paid a fixed salary of nine hundred ($900) dollars per week.

35.    Throughout his employment, Plaintiff ORTIZ regularly worked days that exceed ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff ORTIZ his spread of hours premium for workdays that exceeded ten (10) hours in length. Class Members similarly did not receive their spread of hours premium for workdays that exceeded ten (10) hours in length.

**PLAINTIFF HENRY FLORES***:*

36.     In or around May 2010, Plaintiff HENRY FLORES was hired by Defendants to work as a chef at the Restaurant. Plaintiff's employment with Defendants was terminated in or around March 2020, as a result of Defendants' unlawfully retaliating against Plaintiff, as described below.

37.     From January 2014 until January 2016, Plaintiff HENRY FLORES was regularly scheduled to work from 2:00 p.m. to 1:00 a.m. on Monday, Wednesday, Thursday, Friday, and Saturday. On Sunday, he would work from 10 a.m. to 9 p.m., for a total of sixty-six (66) hours per week. From January 2016 until end of his employment, Plaintiff HENRY FLORES work schedule fluctuated, wherein he worked a total of fifty (50) hours per week.

38.     Throughout his employment, Plaintiff HENRY FLORES was paid on a fixed salary basis regardless of actual hours worked. There was never any conversation that this fixed salary would cover overtime hours after forty (40).

39.     From January 2014 until January 2017, Plaintiff HENRY FLORES was paid a fixed salary of seven hundred ($700) dollars per week. From January 2017 until end of his employment, Plaintiff HENRY FLORES was paid a fixed salary of eight hundred ($800) dollars per week.

40.     Throughout his employment, Plaintiff HENRY FLORES regularly worked days that exceed ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff HENRY FLORES his spread of hours premium for workdays that exceeded ten (10) hours in length. Class Members similarly did not receive their spread of hours premium for workdays that exceeded ten (10) hours in length.

**PLAINTIFF MARIO FLORES:**

41.     In or around January 2014, Plaintiff MARIO FLORES was hired by Defendants to work as a cook at the Restaurant. Plaintiff's employment with Defendants was terminated in or around March 2020, as a result of Defendants' unlawfully retaliating against Plaintiff, as described below.

42.     From January 2014 until January 2020, Plaintiff MARIO FLORES was regularly scheduled to work from 3:00 p.m. to 12:00 a.m. Monday through Tuesday, and from 12:00 p.m. to 12:00 a.m. on Sunday, for a total of thirty (30) hours per week. From January 2020 until end of his employment, Plaintiff MARIO FLORES was regularly scheduled to work from 4:00 p.m. to 12:00 a.m. Mondays and Tuesdays, and from 12:00 p.m. to 12:00 a.m. on Sunday, for a total of twenty-eight (28) hours per week.

43.     Throughout his employment, Plaintiff MARIO FLORES was paid on a fixed salary basis regardless of actual hours worked. There was never any conversation that this fixed salary would cover overtime hours after forty (40).

44.     From the start of his employment until in or around January 2015, Plaintiff MARIO FLORES was paid a fixed salary of two hundred twenty ($220) dollars per week. From January 2015 until January 2016, Plaintiff MARIO FLORES was paid a fixed salary of two hundred seventy ($270) dollars per week. From January 2016 until January 2017, Plaintiff MARIO FLORES was paid a fixed salary of three hundred twenty ($320) dollars per week. From January 2017 until January 2018, Plaintiff MARIO FLORES was paid a fixed salary of three hundred seventy ($370) dollars per week. From January 2018 until January 2019, Plaintiff MARIO FLORES was paid a fixed salary of four hundred twenty ($420) dollars per week. From January 2019 until January 2020, Plaintiff MARIO FLORES was paid a fixed salary of four hundred

seventy ($470) dollars per week. From January 2020 until end of his employment, Plaintiff MARIO FLORES was paid a fixed salary of five hundred twenty ($520) dollars per week.

45.    Throughout his employment, Plaintiff MARIO FLORES occasionally worked days that exceed ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff MARIO FLORES his spread of hours premium for workdays that exceeded ten (10) hours in length. Class Members similarly did not receive their spread of hours premium for workdays that exceeded ten (10) hours in length.

46.    Throughout Plaintiffs' employment, they were paid a fixed weekly salary, regardless of how many hours they worked each workweek. However, there was never any agreement that Plaintiffs' fixed weekly salary was intended to cover the overtime hours worked in excess of forty (40) each week. FLSA Collective Plaintiffs and Class Members were similarly paid on a fixed salary basis and were not properly compensated their overtime premium of time and a half for all hours worked over forty (40) each week, even though there was never any agreement with Defendants that their fixed salaries would cover their overtime hours.

47.    Throughout their employment with Defendants, Plaintiffs regularly worked in excess of ten (10) hours every workday, but they were not compensated their spread of hours premium. FLSA Collective Plaintiffs and Class Members worked similar hours that regularly exceeded ten (10) per day and were not compensated their spread of hours premium.

48.    Throughout Plaintiffs' employment, Defendants occasionally failed to pay Plaintiffs their wages within seven (7) days of the end of the week in which they earned them, in violation of NYLL § 191(1)(a)(i).[1] Defendants would provide Plaintiffs with checks which often

---

[1] See *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

bounced. When the checks bounced, Plaintiffs were then paid in cash two (2) weeks later. Therefore, Plaintiffs are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments as well as costs for the bounced checks fees.

49.     Throughout Plaintiffs' employment, Plaintiffs would occasionally be paid in cash and were not given proper wage statements when they received their pay.

50.     As a result of Defendants paying Plaintiffs in cash, Defendants failed to withhold any of Plaintiffs' wages for tax purposes.

51.     Defendants further failed to provide Plaintiffs with accurate W-2 tax statements for each tax year during which Plaintiffs worked.

52.     Defendants knew or should have known that they had a legal duty to withhold taxes from all of Plaintiffs' earnings and to provide Plaintiffs with accurate W-2 tax statements for each tax year during which Plaintiffs worked.

53.     Plaintiffs and Class Members did not receive wage statements that were in compliance with NYLL. Plaintiffs and Class Members received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation.

54.     Defendants failed to provide Plaintiffs and the Class Members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiffs did not receive wage notices either upon being hired or upon wage changes since the date of hiring, in violation of NYLL.

55.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs, and Class members the proper overtime rate for hours worked in excess of forty (40) in each workweek due to a fixed salary.

56.     Defendants knowingly and willfully operated their business with a policy of not paying spread of hours premium to Plaintiffs and Class Members, in violation of NYLL.

57.    Defendants had a legal obligation to file accurate tax statements with the IRS.

58.    Defendants' actions were willful, and showed reckless disregard for the provisions of the Internal Revenue Code.

59.    Defendants retaliated against Plaintiffs in violation of the FLSA and NYLL by constructively terminating the employment of Plaintiffs in response to their complaints of underpayment of wages.

60.    Throughout their employment, Plaintiffs complained several times about their underpayment of wages to Defendant William Seguro. In or around April 2020, during the last week of Plaintiffs' employment with Defendants, Plaintiffs again complained to Defendant William Seguro about their wages, and he denied any issues with wages. As a result, Plaintiffs started to argue with Defendant William Seguro about their underpayment of wages and he then stated "You'll see what happens next" in response to Plaintiffs arguing with him. Defendant William Seguro then told Plaintiffs, "If you want to keep working here, then apologize to me." When Plaintiffs failed to apologize to Defendant William Seguro, Defendants subsequently hired three new employees and informed Plaintiffs that they were hired as their replacements, that it was Plaintiffs job to train them, and that they wouldn't be needed once they had trained the new hires. Because of the threat of termination, Plaintiffs quit before finishing the training of the new employees.

61.    As a result, Plaintiffs were constructively terminated in retaliation to their complaints of underpayment of wages.

62.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class Members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

63.    Plaintiffs reallege and reaver Paragraphs 1 through 62 of this Class and Collective Action Complaint as if fully set forth herein.

64.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

65.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

66.    At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

67.    At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for hours worked in excess of forty (40) hours per workweek.

68.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

69.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

70.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

71.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime compensation, due to fixed salary, plus an equal amount as liquidated damages.

72.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

73.    Plaintiffs reallege and reaver Paragraphs 1 through 72 of this Class and Collective Action Complaint as if fully set forth herein.

74.    At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

75.    Defendants willfully violated Plaintiffs and Class Members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours each workweek.

76.    Defendants willfully violated Plaintiffs and Class Members' rights by failing to pay them their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

77.    Defendants willfully violated Plaintiffs and Class Members' rights by failing to pay them a spread of hours premium for each workday that exceeded ten (10) or more hours.

78.     Defendants failed to properly notify employees of their overtime pay rate, in direct violation of NYLL.

79.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they did not accurately state the correct hourly rate, correct overtime rate, correct spread of hours rate, and all hours worked.

80.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

81.     Due to Defendants' NYLL violations, Plaintiffs and Class Members are entitled to recover from Defendants their unpaid wages, including overtime compensation, due to fixed salary, damages for unreasonably delayed payments, spread of hour premiums, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

82.     Plaintiffs reallege and reaver Paragraphs 1 through 81 of this Class and Collective Action Complaint as if fully set forth herein.

83.     At all relevant times Plaintiffs were employees of Defendants within the meaning of the FLSA, and were people covered by and intended to benefit from the provisions of the FLSA.

84.     Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this Act."

85.     As alleged herein, Plaintiffs complained to Defendants about their underpaid wages.

86.     In response to such complaints, Defendants constructively terminated Plaintiffs in violation of Section 15(a)(3).

87.     This retaliatory termination was in willful disregard of the provisions of the FLSA.

88.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs suffered damages in the form of lost earnings. Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## COUNT IV

## RETALIATION UNDER THE NEW YORK LABOR LAW

89.     Plaintiffs reallege and reaver Paragraphs 1 through 88 of this Class and Collective Action Complaint as if fully set forth herein.

90.     At all relevant times Plaintiffs were employees of Defendants within the meaning of the NYLL, and were people covered by and intended to benefit from the provisions of the NYLL.

91.     Defendants willfully violated the NYLL by retaliating against Plaintiffs by discharging them shortly after they raised concerns about Defendants' wage policies.

92.     Defendants' actions constitute a violation of Sections 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, <u>reasonably and in good faith, believes violates any provision of this chapter</u>, or any order issued by the commissioner. . . . (emphasis added).

93. As alleged herein, Plaintiffs complained to Defendants about their underpaid wages.

94. In response to such complaints, Defendants constructively terminated Plaintiffs in violation of Section 215(a).

95. This retaliatory termination was in willful disregard of the provisions of the NYLL.

96. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiffs suffered damages in the form of lost earnings. Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

## COUNT V
## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS
## UNDER 26 U.S.C. § 7434(a)

97. Plaintiffs reallege and reaver Paragraphs 1 through 96 of this Class and Collective Action Complaint as if fully set forth herein.

98. By failing to provide Plaintiffs, FLSA Collective Plaintiffs and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants, and failing to properly record, account for, and report to the IRS all monies paid to Plaintiffs, FLSA Collective Plaintiff and Class Members as compensation for all of the work Plaintiffs, FLSA

Collective Plaintiff and Class Members performed during the course of their employment with Defendants, and failing to withhold amounts listed on W-2 forms as monies withheld, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

99.      Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

    a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

    b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

    c.   An award of unpaid wages, including overtime compensation, due to fixed salary;

    d.   An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

    e.   An award of unpaid spread of hours premium due under NYLL;

    f.   An award of back and front pay, compensatory damages, punitive damages, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiffs, pursuant to the NYLL;

g.  An award of statutory damages as a result of Defendants' failure to comply with the Internal Revenue Code tax filing requirements;

h.  Cost attributable to resolving deficiencies;

i.  Damages resulting from the additional tax debt and additional time and expenses associated with any necessary correction;

j.  That Defendants be ordered to take all the necessary steps to correct the information returns identified above;

k.  An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

l.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

m.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work, pursuant to NYLL;

n.  An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

o.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

p.  Designation of this action as a Class Action pursuant to FRCP 23;

q.  Designation of Plaintiffs as Representatives of the Class; and

r.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: February 19, 2021

Respectfully submitted,

By:   */s/ C.K. Lee*
        C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiff and the Class*